# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| BERTA LIDIA ARREAGA-VELASQUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:18-cv-03463-DCN |
| vs. | ) |
| | ) **ORDER** |
| KENNETH T. CUCCINELLI II, *Acting Director,* | ) |
| *U.S Citizenship and Immigration Services* | ) |
| and KEVIN MCALEENAN, *Acting Secretary*, | ) |
| *U.S. Department of Homeland Security*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

The following matter is before the court on plaintiff Berta Lidia Arreaga-Velasquez's ("plaintiff") motion for summary judgment, ECF No. 18, and defendants Kenneth T. Cuccinelli II, Acting Director, U.S Citizenship and Immigration Services and Kevin McAleenan, Acting Secretary, U.S. Department of Homeland Security (collectively, the "government") cross-motion for summary judgment, ECF No. 21[1]. For the reasons set forth below, the court grants in part and denies in part plaintiff's motion for summary judgment and grants in part and denies in part the government's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff was born in Guatemala on July 28, 1996. ECF No. 16-5 at 10. In December 2013, plaintiff entered the United States without inspection, admission, or parole. U.S. Border Patrol agents apprehended plaintiff shortly after her entry near Eagle Pass, Texas. Id. Plaintiff was issued a Form I-862, Notice to Appear, then was taken into

---

[1] ECF Nos. 20 and 21 are the same document.

the custody of the Office of Refugee Resettlement, and subsequently released to the custody of her mother. Id. On July 22, 2014, the Family Court of the Fourteenth Judicial Circuit in Beaufort County, South Carolina ("Family Court") issued an amended temporary order declaring plaintiff a dependent on the Family Court and under the jurisdiction of the Family Court until a final order was entered. ECF No. 16-3 at 30–31 ("Temporary Order"). The Temporary Order granted plaintiff's mother custody of plaintiff and made specific fact findings for the purpose of establishing plaintiff's eligibility for special immigrant juvenile ("SIJ") status under 8 U.S.C. § 1101(a)(27)(J). Id. SIJ status is a classification under the Immigration and Nationality Act (the "INA") that permits an immigrant to pursue lawful permanent residence and, potentially, United States citizenship. As codified at 8 U.S.C. § 1101(a)(27)(J) (the "SIJ provision"), the INA specifies that an immigrant may qualify for SIJ status if, inter alia, "a juvenile court located in the United States" has "placed [her] under the custody of" "an individual" and "reunification with 1 or both of [her] parents is not viable." See 8 U.S.C. § 1101(a)(27)(J)(i).

On October 6, 2014, plaintiff filed Form I-360 to the U.S. Citizenship and Immigration Services ("USCIS") field office in Charleston, South Carolina to seek classification as a SIJ. ECF No. 16-3 at 15–26. The USCIS Charleston Field Office Director denied the plaintiff's petition. ECF No. 16-5 at 9. Plaintiff appealed the USCIS Charleston Field Office Director's decision, and on April 28, 2016, the USCIS Administrative Appeals Office ("AAO") issued a non-precedent decision dismissing plaintiff's appeal ("2016 AAO Decision"). Id. at 9–14. The 2016 AAO Decision stated that the Temporary Order was deficient "as it is temporary in nature and does not contain

2

the requisite determination regarding the non-viability of parental reunification due to abuse, neglect, or abandonment.  Consequently, the [plaintiff] does not meet the requirements . . . and is ineligible for SIJ classification."  Id. at 14.

On December 7, 2016, plaintiff's mother filed a complaint seeking continuing custody, maintenance, and support obligations of plaintiff ("Permanent custody action"). ECF No. 16-6 at 36.  On December 28, 2016, the Family Court acknowledged that that temporary custody was granted to plaintiff's mother and that the Permanent custody action arose from the jurisdiction asserted in the Temporary Order and was necessary because plaintiff had turned 18 but was still not married, self-supporting, or graduated from high school.  Id.  After declaring continued jurisdiction over plaintiff even though she was over the age of 18, the Family Court awarded sole physical and legal custody to plaintiff's mother until plaintiff "is married or becomes self-supporting, not to exceed high school graduation, whichever is later."  ECF 16-6 at 36–39 ("Final Order").  The Final Order also made specific fact findings for the purpose of establishing plaintiff's eligibility for SIJ status under 8 U.S.C. § 1101(a)(27)(J).  Id.  Based on the Final Order, plaintiff again filed a Form I-360 and submitted it to the USCIS seeking a classification as a SIJ.  ECF No. 16-7 at 22–27 ("2018 USCIS Decision").  On March 13, 2018, the USCIS denied plaintiff's application for classification as a SIJ stating:

> USCIS does not question the court's jurisdiction over you as a person over the age of 18 for the purposes of child support within the court order. However, the court order does not establish the court exercised jurisdiction over you as a child under South Carolina law for the purposes of court-ordered juvenile dependency or custody, as required [for SIJ classification].

2018 USCIS Decision at 3.

On December 16, 2018 plaintiff filed this complaint asking the court for relief under the Administrative Procedure Act ("APA"). ECF No. 1. On October 30, 2019, plaintiff filed this motion to for summary judgment. ECF No. 14. On December 12, 2019, the government filed a response to plaintiff's motion and filed a cross-motion for summary judgment. ECF Nos. 20–21. On January 1, 2020, plaintiff filed her response to the government's cross-motion and reply to government's response, ECF No. 23, to which the government replied on January 31, 2020, ECF No. 26. These motions have been fully briefed and are now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most

favorable to the non-moving party and draw all inferences in its favor. Id. at 255. When cross motions for summary judgment are filed, the court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).

However, the APA subjects final agency action to judicial review to determine whether it is both supported by the administrative record and consistent with the APA. 5 U.S.C. § 704. A reviewing court must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." Id. at § 706. The court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," id. § 706(2)(A); "contrary to constitutional right, power, privilege, or immunity," id. § 706(2)(B); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," id. § 706(2)(C); "without observance of procedure required by law," id. § 706(2)(D); or "unsupported by substantial evidence," id. § 706(2)(E).

"Regardless of how serious the problem an administrative agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 125 (2000) (quoting ETSI Pipeline Project v. Missouri, 484 U.S. 495, 517 (1988)). Agency action "is always subject to check by the terms of the legislation that authorized it; and if that authority is exceeded it is open to judicial review as well as the power of Congress to modify or revoke the authority entirely." INS v.

Chadha, 462 U.S. 919, 953 n. 16 (1983).  At times, "more intense scrutiny" of agency

action is appropriate, such as where "the agency interprets its own authority," due to "the

unspoken premise that government agencies have a tendency to swell, not shrink, and are

likely to have an expansive view of their mission."  Chamber of Commerce of U.S. v.

N.L.R.B., 856 F. Supp. 2d 778, 786 (D.S.C. 2012), aff'd, 721 F.3d 152 (4th Cir. 2013)

(quoting Hi–Craft Clothing Co. v. NLRB, 660 F.2d 910, 916 (3d Cir. 1981)).

> Reviewing courts are not obliged to stand aside and rubberstamp their
> affirmance of administrative decisions that they deem inconsistent with a
> statutory mandate or that frustrate the congressional policy underlying a
> statute.  Such review is always properly within the judicial province, and
> courts would abdicate their responsibility if they did not fully review such
> administrative decisions.

NLRB v. Brown, 380 U.S. 278, 291 (1965).

## III.  DISCUSSION

### A.  2018 USCIS Decision

Plaintiff contends that the USCIS exceeded its authority and erred in its statutory

interpretation of 8 U.S.C. § 1101(a)(27)(J)(i) ("clause (i) of the SIJ provision") in the

2018 USCIS Decision. ECF No. ECF 18-1 at 7.  By finding that the Family Court was

not exercising its jurisdiction as a juvenile court for the purposes of court-ordered

juvenile dependency or custody because plaintiff was over the age of 18, plaintiff argues

the 2018 USCIS Decision misinterprets South Carolina law, implements regulations that

do not reflect congressional intent, and defies the plain language of the SIJ provision.

ECF 23 at 7–10.  The government argues because the Final Order referenced a different

section of the South Carolina Code than the Temporary Order, the Family Court did not

have the necessary jurisdiction to meet the requirements for a SIJ classification because

plaintiff was no longer a child under South Carolina law and the court did not exercise its

jurisdiction as a juvenile court as defined by the INA.  ECF No. 21 at 9.  Therefore, the

government argues that USCIS's interpretation of clause (i) of the SIJ provision in the

2018 USCIS Decision was appropriate.  Id.  The government relies upon the USCIS's

interpretation of 8 C.F.R. § 204.11(a) to support the proposition that the Family Court

must have jurisdiction as a juvenile court for the purposes of court-ordered juvenile

dependency or custody over an immigrant under the age of 18 in order to meet the

obligations of clause (i) of the SIJ provision.  Id.  In short, plaintiff argues that an

immigrant may be over the age of 18 and remain eligible for SIJ status, and the

government contends that an immigrant must be under the age of 18 to be eligible for SIJ

status.

### 1.  Standard for Deference

As a threshold matter, the court must examine the standard of review for making

its determination of whether the USCIS erred in its statutory interpretation of clause (i) of

the SIJ provision.  The government argues that the court must review the 2018 USCIS

Decision in a manner that is "highly deferential" to the USCIS's finding.  ECF No. 21 at

12–13.  Plaintiff contends that the 2018 USCIS Decision is entitled no deference.  ECF

No. 18-1 at 7.  In Kentuckians for Commonwealth Inc. v. Rivenburgh, the Fourth Circuit

explained the proper procedure for the court when performing a deference analysis of an

agency acting pursuant to a regulation and a statute:

> [W]hen an agency acts pursuant to a regulation, a reviewing court must, if
> there is any dispute about the meaning of the regulation, interpret the
> meaning of the regulation to determine whether the agency's action is
> consistent with the regulation.  The reviewing court does not have much
> leeway in undertaking this interpretation, however, because the agency is
> entitled to interpret its own regulation and the agency's interpretation is
> "controlling unless plainly erroneous or inconsistent with the regulation."
> Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks and

citation omitted). This requirement of binding deference to agency interpretations of their own regulations, unless "plainly erroneous or inconsistent with the regulation," is known as <u>Seminole Rock</u> deference, having first been articulated in <u>Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414, (1945).

Finally, if there is any question whether an agency action taken pursuant to a regulation exceeds the agency's statutory authority, the statutory inquiry under <u>Chevron</u> step one (whether the intent of Congress is clear) must take place prior to interpreting the agency's own regulation. This ordering is a function of the <u>Chevron</u> test itself: If Congress has spoken clearly to the issue, then the regulation is inapplicable. See <u>Chevron U.S.A. Inc. v. Echazabal</u>, 536 U.S. 73, 79–84 (2002) (applying an analytical approach by which the validity of an action taken in reliance of a regulation depends, in the first instance, on whether the regulation itself exceeds the issuing agency's statutory authority); <u>see also</u> John F. Manning, <u>Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules</u>, 96 Colum. L.Rev. 612, 627 n. 78 (1996) ("It is important to note that because a regulation must be consistent with the statute it implements, any interpretation of a regulation naturally must accord with the statute as well. . . . [T]o get to <u>Seminole Rock</u> deference, a court must first address the straightforward <u>Chevron</u> question whether an agency regulation, as interpreted, violates the statute. <u>Seminole Rock</u> addresses the further question whether the agency's interpretation is consistent with the regulation").

<u>Kentuckians for Commonwealth Inc. v. Rivenburgh</u>, 317 F.3d 425, 439–40 (4th Cir. 2003). Here, plaintiff argues the USCIS exceeded its statutory authority in the 2018 USCIS Decision by relying upon 8 C.F.R. § 204.11(a) to support the proposition that the Family Court must be exercising its jurisdiction over an immigrant under the age of 18 for the purposes of juvenile custody in order to meet the obligations of clause (i) of the SIJ provision. ECF No 18-1 at 7. Therefore, the court will begin its analysis by determining if the intent of Congress is clear as to whether such a requirement exists. <u>See</u> <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 842–43 (1984) ("First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Since originally passed by Congress in 1990, the criterion for SIJ eligibility has evolved over time to ensure that the statute reflects current congressional intent. When first passed in 1990, the INA conferred SIJ status to juveniles who had been "declared dependent on a juvenile court," and "deemed eligible by that court for long-term foster care," in cases where the juvenile court also determined "that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." Immigration Act of 1990, Pub. L. No. 101-649 § 153, 104 Stat. 1978, 5005-06 (1990) (amending 8 U.S.C. § 1101). In 1993, the Immigration and Naturalization Service ("INS") implemented regulations that defined the statutory term "juvenile court" as a "court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 101.6(a) (1993). This regulation was adopted when SIJ status was still limited only to juveniles who were deemed eligible by a juvenile court for long-term foster care. Id. Under the 1993 regulations, determination of whether an immigrant was considered a juvenile depended upon "the law of the state in which the juvenile court upon which the alien has been declared dependent is located[.]" Id. § 101.6(c)(1).

Congress amended the SIJ provision in 1997 to allow juvenile immigrants to be eligible for SIJ status if such an individual had been "legally committed to, or placed under the custody of, an agency or department of a State and who ha[d] been deemed eligible by that [juvenile] court for long-term foster care due to abuse, neglect, or abandonment." Pub. L. No. 105-119 § 113, 111 Stat. 2440, 2460 (1997) (amending 8

U.S.C. § 1101). INS regulations defining "juvenile court" remained primarily intact but added that eligible juveniles were aliens "under twenty-one years of age." 8 C.F.R. §§ 204.11(a), (c)(1) (1999). Federal law continued to defer to state courts applying state law for "declarations of dependency." 8 C.F.R. § 204.11(c)(3) (1999). In 2008, Congress again clarified its intent of who may be eligible for SIJ status when it again amended the SIJ provision by passing the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"). The requirement that the juvenile must be eligible for long-term foster care was removed under the TVPRA, and the SIJ provision now applied to juveniles for whom "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." Pub. L. 110-457 § 235(d)(1)(B), 122 Stat. 5044 (2008) (amending 8 U.S.C. § 1101(a)(27)(J)). In contrast to the 1997 amendments, the TVPRA expanded who may be eligible for SIJ status by giving eligibility to juveniles who have been "declared dependent on a juvenile court located in the United States <u>or</u> whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court . . . ." 8 U.S.C. § 1101(a)(27)(J)(i) (emphasis added).

Even though Congress eliminated the foster care requirement by passing the TVPRA, the regulations have continued to rely on foster care determinations and requirements for eligibility such as "the alien . . . [h]as been deemed eligible by the juvenile court for long-term foster care . . . [and] [c]ontinues to be dependent upon the juvenile court and eligible for long-term foster care" and continuing to define a "juvenile court" as "having jurisdiction under State law to make judicial determinations about the

10

custody and care of juveniles."  See 8 C.F.R. § 204.11(a), (c)(4)–(5).  In 2015, the Citizen and Immigration Services Ombudsman ("CISOMB") found that the USCIS was "relying . . . on language that had disappeared from the statute" to make its determination of SIJ eligibility, and that USCIS needed to amend 8 C.F.R. § 204.11 because, "[t]he SIJ regulations, which have not been updated since 1993, no longer comport with statutory language."  Department of Homeland Security, Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudications, Citizenship and Immigration Services Ombudsman report at 11 (December 11, 2015).  In response to the 2015 CISOMB report, the USCIS acknowledged that the SIJ regulations no longer reflected the SIJ provision, and declared, "USCIS is . . . in the process of amending its regulations governing the SIJ classification and related applications for adjustment of status.  The final rule will implement updates to eligibility requirements and other changes made by the [TVPRA]."  U.S. Citizenship and Immigration Services, USCIS Response to the Citizenship and Immigration Services Ombudsman's 2015 Annual Report to Congress at 23 (June 30, 2016).  Despite USCIS's declaration that an amendment to the regulation was in process in 2016, there still have not been any changes made to 8 C.F.R. § 204.11 that reflect the current language of the SIJ provision.  In short, while Congress's evolving intent for who may qualify for SIJ status was reflected in amendments to the SIJ provision, this intention was not reflected in corresponding amendments to the regulations.

Congress has spoken directly to the issue of whether a state court must be exercising its jurisdiction over an immigrant who is under the age of 18 for the purpose of establishing the immigrant's eligibility for SIJ status.  Congressional intent clearly allows

for individuals over the age 18 to be eligible for SIJ status.  Therefore, the USCIS's

reliance on 8 C.F.R. § 204.11 to support the opposite proposition, which the 2018 USCIS

Decision does, is erroneous.  Because 8 C.F.R. § 204.11(a) does not reflect congressional

intent and the 2018 USCIS Decision relied upon its interpretation that 8 C.F.R. §

204.11(a) requires that the Family Court must be exercising its jurisdiction over an

immigrant under the age of 18 in order to meet the obligations of clause (i) of the SIJ

provision, the court finds that the 2018 USCIS Decision is not entitled to <u>Chevron</u>

deference.

      Absent eligibility for <u>Chevron</u> deference, agency interpretations are only "given a

level of respect commensurate with their persuasiveness."  <u>Perez v. Cuccinelli</u>, 2020 WL

611530, at *9 (4th Cir. Feb. 10, 2020) (citing <u>Ramirez v. Sessions</u>, 887 F.3d 693, 701

(4th Cir. 2018).  Under the <u>Skidmore</u> doctrine, an agency's "'specialized experience' may

justify granting its statutory interpretation a degree of deference 'proportional to its

power to persuade.'"  <u>United States v. Mead Corp.</u>, 533 U.S. 218, 234-35 (2001) (quoting

<u>Skidmore v. Swift & Co</u> 323 U.S. 134, 139–40 (1944)).  In applying <u>Skidmore</u> deference,

"courts have looked to the degree of the agency's care, its consistency, formality, and

relative expertness, and to the persuasiveness of the agency's position."  <u>Id.</u> at 228

(footnotes omitted).  Not one indicia of persuasiveness recognized by <u>Skidmore</u> is

exhibited in the 2018 USCIS Decision.  Nothing about the 2018 USCIS Decision

indicates that the USCIS's interpretation of clause (i) of the SIJ provision was reached

through careful analysis or a reliance on its expertise nor did the 2018 USCIS Decision

explain its reasoning or identify any supporting authority, including any consistent ruling

from the USCIS.  Therefore, the court finds that the 2018 USCIS Decision is not entitled to _Skidmore_ deference.

In short, the court finds that the USCIS's interpretation of clause (i) of the SIJ provision and 8 C.F.R. § 204.11(a) in the 2018 USCIS Decision is not entitled to _Chevron_ deference, because it does not reflect current congressional intent.  See _Morton v. Ruiz_, 415 U.S. 199, 237 (1974) ("In order for an agency interpretation to be granted deference, it must be consistent with the congressional purpose.").  The court also finds that the USCIS's statutory interpretation in the 2018 USCIS Decision's not entitled to _Skidmore_ deference because the USCIS "has not demonstrated the carefulness, expertise, or consistency that would imbue its interpretation with the power to persuade."  _Perez_, 2020 WL 611530, at *10.

### 2.  Statutory Interpretation

Having found that the 2018 USCIS is not entitled to any deference, the court now turns its attention to the statutory interpretation of clause (i) of the SIJ provision.  The SIJ provision is as follows:

> an immigrant who is present in the United States –
>
> (i)    who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law.

8 U.S.C. § 1101(a)(27)(J).  The Fourth Circuit decision in _Perez v. Cuccinelli_, prescribes how a court should proceed in reviewing the USCIS's statutory interpretation under the APA.  2020 WL 611530.  Like the issue before this court, in _Perez_ the Fourth Circuit also

examined the USCIS's interpretation of clause (i) of the SIJ provision. Id. at *5. The Perez court stated that "the APA permits the court to set aside an agency action if the action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Id. at *5 (citing 5 U.S.C. § 706(2)(A)). The Perez court held that if a plaintiff's application for a SIJ classification is denied on the basis of the USCIS's statutory interpretation, the court must "decide whether that interpretation is 'not in accordance with law,' bearing in mind that it is our duty under the APA to 'decide all relevant questions of law' and to 'interpret constitutional and statutory provisions.'" Id. "If statutory language is clear and unambiguous, an agency's interpretation thereof is not entitled to deference." Id.; See Chevron 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. (internal citation omitted).

The court finds that USCIS's interpretation of clause (i) of the SIJ provision is not in accordance with law, using the holding in Perez as a framework for making such a determination. See id. The precise question before the court is whether USCIS correctly concluded that Congress intended to impose a requirement that the juvenile court must be exercising its jurisdiction by making a determination about the custody of the immigrant "who is a child under state law and under the age of 18" when it defined an SIJ as an immigrant "who has been declared dependent on a juvenile court located in the United States . . . or placed under the custody of . . . an individual or entity appointed by a State

14

or juvenile court, and whose reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." See 8 U.S.C. § 1101(a)(27)(J)(i).  In other words, the court assesses the USCIS's view that clause (i) of the SIJ provision requires that the juvenile court have jurisdiction over an immigrant who is a child under state law and under the age of 18.

With respect to the 2018 USCIS Decision finding that a juvenile court must have jurisdiction over an individual as a child under state law who is under the age of 18 is a requirement of clause (i) of the SIJ provision, the court applies the "fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  Perez, 2020 WL 611530 at, *6 (quoting United States v. Mills, 850 F.3d 693, 697 (4th Cir. 2017)).  Clause (i) of the SIJ provision simply requires a finding that the immigrant be, "declared dependent on a juvenile court . . . or placed under the custody of . . . an individual or entity appointed by a State or juvenile court . . . ."  See 8 U.S.C. § 1101(a)(27)(J)(i) (emphasis added).  In Perez, the Fourth Circuit found that clause (i) of the SIJ provision did not have a permanent non-viability of reunification requirement because "nothing about clause (i) [of the SIJ provision]'s language, the context in which it is used, or the broader context of the SIJ provision as a whole suggests that 'is' somehow equates with 'will always be.'" Perez, 2020 WL 611530 at, *6 (citing Hately v. Watts, 917 F.3d 770, 784 (4th Cir. 2019) ("To determine a statute's plain meaning, we not only look to the language itself, but also the specific context in which the language is used, and the broader context of the statute as a whole.  If the plain language is unambiguous, we need look no further.") (internal quotation marks omitted)).  Here, the USCIS conflates "dependent" with "child under the

age of 18."  "Dependent" means "someone who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else."  Black's Law Dictionary (11th ed. 2019).  Nothing in the definition of "dependent" refers to the age of that person nor that the person must be deemed a child by state law.

The Fourth Circuit announced their "confidence . . . is bolstered" in their finding "that Congress did not intend for clause (i) [of the SIJ provision] to demand a finding of the permanent non-viability of reunification" because "if Congress had intended such a requirement, it easily could have said so.  Indeed, the very paragraph of the INA containing the SIJ provision explicitly states a permanency requirement in another context."  Perez, 2020 WL 611530 at, *6.  In this instance, the very paragraph of the INA containing the SIJ provision explicitly states that an individual be a child in order to receive special immigrant status in multiple other contexts.  See 8 U.S.C. § 1101(a)(27)(C), (E)–(I)(i), (H), (K).  The Fourth Circuit in Perez found that the "omission of 'permanent' or a like term from the SIJ provision in these circumstances is highly illuminating of congressional intent."  Perez, 2020 WL 611530 at, *6 (citing United States v. Serafini, 826 F.3d 146, 149 (4th Cir. 2016) (explaining that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).

The Perez court held that the presence of the word "permanent" in one other context within 8 U.S.C. § 1101(a)(27) made the absence of that word in 8 U.S.C. § 1101(a)(27)(J), "[p]lainly [clear] Congress did not intend to include a requirement in clause (i) [of the SIJ provision] for a finding of the permanent non-viability of

reunification." Id. Here, the word "child" or a like term appears seven times within 8 U.S.C. § 1101(a)(27), but not in 8 U.S.C. § 1101(a)(27)(J). Therefore, the court finds that if Congress wanted to restrict SIJ status only to immigrants under the age of 18, Congress would have included the word "child" or a like term in the SIJ provision. Because Congress did not include the word "child" or a like term, the court finds that the omission of the word "child" in clause (i) of the SIJ provision makes it plainly clear that Congress did not intend to include a requirement in the SIJ provision for a finding that the immigrant must be a child under state law or under the age of 18.

Based on the findings in Perez, the court holds that Congress did not intend to include a requirement in clause (i) of the SIJ provision for a finding that a juvenile court must have jurisdiction over an immigrant who is a child under state law and under the age of 18. Therefore, applying ordinary rules of statutory construction and based on Perez, the court finds that the language of clause (i) of the SIJ provision is clear and unambiguous and that a finding by the juvenile court having jurisdiction over a child under state law and who is under the age of 18 is not required. Thus, the court accords USCIS's contrary interpretation no deference and recognizes that, by defying the plain statutory language, that interpretation is not in accordance with law. Perez, 2020 WL 611530 at, *6 (citing Prudencio v. Holder, 669 F.3d 472, 480 (4th Cir. 2012) ("If, using traditional tools of statutory construction, we determine that Congress manifested an intention on the precise question [at issue], such intention must be given effect and the analysis concludes." (internal citation omitted).[2]

---

[2] To the extent that the government argues that the use of the word "juvenile" in the definition of "juvenile court" in 8 C.F.R. § 204.11(a) requires that the immigrant must be a child under state law and under the age of 18, the court rejects that interpretation

By finding that the plain language of clause (i) of the SIJ provision does not require a finding by the juvenile court that it has jurisdiction over an individual as a child under state law and who is under the age of 18, the court "need look no further" and could end its analysis.  Hately, 917 F.3d at 784.  Nevertheless, the court will examine whether the USCIS had the authority to determine the Family Court was not exercising its jurisdiction as a "juvenile court" as defined in clause (i) of the SIJ provision.  The government contends that the Family Court was not exercising its jurisdiction as a "juvenile court" because S.C. Code Ann. § 63-1-40(1) defines a "child" as "a person under the age of eighteen", and because S.C. Code Ann. § 63-3-530(A)(17) only confers jurisdiction to the Family Court for child support and not for custody.  ECF No. 21 at 21.  Plaintiff argues that USCIS's reliance on 8 C.F.R. § 204.11(a) to limit the definition of "juvenile courts" to immigrants who are children under state law violates the SIJ provision and that the USCIS misapplied South Carolina state law in determining what age is still considered a "child" and at what age can a court may maintain jurisdiction to order custody of an individual.  ECF No. 18-1 at 10–12.

The court has found that congressional intent of the SIJ provision is to allow immigrants to remain eligible up to age 21.  To the extent that the 2018 USCIS relied on 8 C.F.R. § 204.11(a) to interpret the SIJ provision as limiting the eligibility of immigrants to those age 18 and under, the court finds that such an interpretation is contrary to law.  The 2018 USCIS Decision also relied on S.C. Code Ann. § 63-1-40(1) to find that under

---

because that regulation exceeds USCIS's statutory authority under the SIJ provisions, as stated in more detail above.  See Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 79–84 (2002) (applying an analytical approach by which the validity of an action taken in reliance of a regulation depends, in the first instance, on whether the regulation itself exceeds the issuing agency's statutory authority).

South Carolina law a child is "a person under the age of eighteen" and because plaintiff was "20 years old at the time the court entered its order[, plaintiff] w[as] not a juvenile under South Carolina law at the time the order was entered." 2018 USCIS Decision at 2.

S.C. Code Ann. § 63-1-40(1) states, "[w]hen used in this title <u>and unless otherwise defined or the specific context indicates otherwise</u>: "[c]hild" means a person under the age of eighteen." (Emphasis added). The USCIS failed to consider S.C. Code Ann. § 63-1-40(1) in its entirety by failing to acknowledge that there are situations when an individual can be over 18 and still be a "child" under South Carolina law. S.C. Code Ann. § 63-3-530(A)(17) states that the family court has the exclusive jurisdiction for an individual "past the age of eighteen years if the child is enrolled and still attending high school, not to exceed high school graduation or the end of the school year after the child reaches nineteen years of age, whichever is later." This part of S.C. Code Ann. § 63-3-530(A)(17) gives the specific context when an individual may be over the age of 18 and still be considered a child under South Carolina. The Final Order states that the plaintiff is "not married, is not self-supporting, and has not graduated from high school." ECF No. 16-6 at 36. Clearly, plaintiff met the criteria for the specific context required for an individual to be over the age of 18 and considered a child under South Carolina law.

The government points to the Fifth Circuit's decision in <u>Budhathoki v. Nielsen</u>, 898 F.3d 504 (5th Cir. 2018), to support the 2018 USCIS Decision finding that plaintiff was not a child under South Carolina law. In <u>Budhathoki</u>, the Fifth Circuit did not examine whether the plaintiffs were children under Texas law and relied instead on the fact that the state court order contained "no declaration of dependency" to affirm the district court's ruling that USCIS did not exceed its authority in denying the SIJ

applications. 898 F.3d at 516. However, the district court directly ruled on what would have been necessary in the Texas state court order to find that the plaintiffs were children:

> The Court agrees — the SAPCR orders do not contain a reasonable basis for the findings that the Texas courts were "juvenile court[s]" and Plaintiffs were dependent on those courts. While Plaintiffs provide a plausible construction of Texas law supporting the Texas court's jurisdiction and Plaintiffs' dependency, none of their arguments are found within the Texas courts' SAPCR orders, which is what USCIS reviewed in making its decisions. For instance, the SAPCR orders do not assert jurisdiction over Plaintiffs as "child[ren]" defined by Section 101.003(b) of the Texas Family Code.

Budhathoki v. Dep't of Homeland Sec., 220 F. Supp. 3d 778, 787 (W.D. Tex. 2016), aff'd sub nom. Budhathoki v. Nielsen, 898 F.3d 504 (5th Cir. 2018). Like S.C. Code Ann. § 63-3-530(A)(17), Section 101.003(b) of the Texas Family Code states the circumstances when an individual can be considered a child over the age of 18 under Texas state law. Here, the Final Order contained exactly what the Texas state court order did not — assertion of jurisdiction over plaintiff by the state law which allows for an individual to be considered a child over the age of 18. ECF No. 16-6 at 36. Because the USCIS failed to consider the language allowing a person to be considered a child under South Carolina law above the age of 18, plaintiff met the specific context required for such consideration, and the Final Order asserted jurisdiction over plaintiff under the state law that allows for a "child" to be over the age of 18, the court finds the USCIS did not properly interpret South Carolina law and that plaintiff was a "child" under South Carolina law at the time of the Final Order.

Additionally, the government argues that S.C. Code Ann.§ 63-3-510 allows the Family Court jurisdiction over custody decisions only for children under 18 and that S.C.

Code Ann. § 63-3-530(A)(17) does not grant the Family Court jurisdiction to make custody decisions. ECF 21 at 20–22. Therefore, the government contends that the 2018 USCIS Decision was correct in finding that the Final Order was not making a determination about the custody and care of a child and did not exercise its jurisdiction as a juvenile court. Id. Plaintiff again argues that USCIS exceeded its statutory authority and misinterpreted South Carolina law. ECF 18-1 at 11–12; ECF No. 23 at 9–10.

S.C. Code Ann.§ 63-3-510(B) states:

> Whenever the court has acquired the jurisdiction of any child under eighteen years of age, jurisdiction continues so long as, in the judgment of the court, it may be necessary to retain jurisdiction for the correction or education of the child, but jurisdiction shall terminate when the child attains the age of twenty-two years.

Again, the USCIS failed to consider S.C. Code Ann. § 63-3-510 in its entirety by failing to acknowledge that there are situations when the state court can make a determination about the custody and care of an individual who is over the age of 18, and that individual is still a "child" under South Carolina law. In the Temporary Order, the Family Court established its jurisdiction over plaintiff under S.C. Code Ann. § 63-3-510 and stated that plaintiff "remained under this Court's jurisdiction . . . until a final order is entered." ECF No. 16-3 at 30. At the time of the Temporary Order, plaintiff was under the age of 18. Id. In the Final Order, the Family Court clearly established that "the present action was filed for continued custody, support, and maintenance" from the Temporary Order. ECF No. 16-6 at 36. The Final Order grants plaintiff's mother "sole physical and legal custody" and states that plaintiff's mother "is obligated to support and maintain [plaintiff] until she is married or becomes self-supporting, not to exceed high school graduation" and "is authorized to continue to be the sole signatory for [plaintiff]'s

21

educational and medical purposes." Id. at 39. The Final Order stated that the Family Court was "exercising jurisdiction over [plaintiff] as a juvenile by the power vested in the Court through Chapter 3 of the South Carolina's Children's Code, and specifically Section 63-3-530(A)(17)." Id. The government argues that the Final Order stated its jurisdiction was vested "specifically Section 63-3-530(A)(17)," which necessarily meant the Family Court was no longer also exercising its jurisdiction under S.C. Code Ann.§ 63-3-510(B). ECF No. 21 at 20.

The court finds that there is nothing in the Final Order that would indicate to the USCIS that the Family Court did not exercise jurisdiction under both S.C. Code Ann. § 63-3-510 and S.C. Code Ann. § 63-3-530(A)(17). Because the Family Court first exercised jurisdiction over plaintiff under in S.C. Code Ann. § 63-3-510 while plaintiff was under the age of 18 and the Final Order made holdings that were necessary for the education of the child, plaintiff specifically meets the criteria established in S.C. Code Ann. § 63-3-510(B) for when a court may maintain jurisdiction of a "child" over the age of 18 for purposes of custody determinations. Additionally, although the Final Order does specifically reference S.C. Code Ann. § 63-3-530(A)(17), it also states it is exercising jurisdiction "by the power vested in the Court through Chapter 3 of the South Carolina's Children's Code." ECF No. 16-6 at 36. These powers include S.C. Code Ann. § 63-3-510. For the USCIS's interpretation to be correct, the word "specifically" would necessarily mean "exclusively", and it does not. The court finds that a proper interpretation of South Carolina law and the Family Court's exercise of jurisdiction is that the Family Court references S.C. Code Ann. § 63-3-530(A)(17) to supplement, not supplant, its jurisdictional authority and allow the Family Court to issue rulings on both

custody and support. Because S.C. Code Ann. § 63-3-510(B) does not allow for the Family Court to issue orders related to support for individuals over the age of 18, the Family Court appropriately supplemented its jurisdiction by referencing S.C. Code Ann. § 63-3-530(A)(17). The court finds USCIS's interpretation to the contrary is not in accordance with South Carolina law.

The government again relies on Budhathoki to support the USCIS's interpretation. This reliance is again misplaced. In Budhathoki, the Fifth Circuit "ma[d]e no holding as to jurisdiction," but did "conclude, then, that before a state court ruling constitutes a dependency order, it must in some way address custody or at least supervision . . . [and] demands that a state court do more than impose a financial obligation on parents." 898 F.3d at 513. As the Fifth Circuit in Budhathoki "demands", the Final Order imposes more than a financial obligation on parents, and expressly addresses both custody and supervision. ECF No. 16-6 at 36, 39. Because the USCIS failed to consider the language allowing a person to be considered a child under South Carolina law above the age of 18 for the purposes of custody determinations and plaintiff met the specific context required for such consideration, the Final Order asserted jurisdiction over plaintiff under the state law that allows for a "child" to be over the age of 18 for the purposes of custody determinations, and the Final Order specifically addressed the issue of custody, the court finds the USCIS did not properly interpret South Carolina law because in the Final Order, the Family Court properly exercised its jurisdiction as a juvenile court for the purpose of a custody determination as required by the SIJ provision.

In sum, the court finds that the USCIS's interpretation of clause (i) of the SIJ provision and 8 C.F.R. § 204.11(a) in the 2018 USCIS Decision is not entitled to Chevron nor Skidmore deference and the USCIS's interpretation of clause (i) of the SIJ provision and 8 C.F.R. § 204.11(a) in the 2018 USCIS Decision defies the plain statutory language by finding that the SIJ provision required a finding of the Family Court exercising jurisdiction over an immigrant who is a child under state law and is under the age of 18, and therefore is not in accordance with law. Furthermore, even if the SIJ provision did require that an immigrant be a child under state law, the court finds that the Final Order properly exercised its jurisdiction over plaintiff as a child for the purposes of custody under South Carolina law. Therefore, the court grants plaintiff's motion for summary judgment and denies the government's cross-motion for summary judgment as it relates to the 2018 USCIS Decision.[3] The court remands this case back to the USCIS and instructs the USCIS to re-examine plaintiff's application for SIJ status based on the court's finding that the Final Order established that the Family Court was a juvenile court and that it properly exercised its jurisdiction over plaintiff as a "child" under South Carolina law, for the purposes of court-ordered juvenile dependency or custody.

**B. 2016 AAO Decision**

In the 2016 AAO Decision, the AAO denied plaintiff's application for SIJ status for two reasons. ECF No. 16-5 at 9–14. The 2016 AAO Decision found that the Temporary Order was deficient because it did not find the permanent non-viability of plaintiff's reunification with one or both of her parents and because it did not state with

---

[3] The plaintiff informs the court that analysis on the 2016 AAO Decision is not needed if the court sets aside the 2018 USCIS Decision. ECF No. 18-1 at 7. For the sake of thoroughness, the court will continue with analysis of the 2016 AAO Decision.

sufficient specificity that reunification was not viable due to abuse, neglect, or abandonment. Id. at 13. The court will first examine whether the Temporary Order was required to have a finding of the permanent non-viability of plaintiff's reunification with one or both of her parents. Then the court will turn its attention to whether the Temporary Order was sufficiently specific in finding that plaintiff's inability to reunify with her father was due to abuse, neglect, abandonment, or a similar basis found under South Carolina state law.

### 1. Permanent Order Requirement

The government argues that in the 2016 AAO Decision, the AAO correctly found that the Temporary Order was insufficient to grant plaintiff with SIJ status because, "[i]t would be inconsistent with the statutory text of § 1101(a)(27)(J) to f[i]nd SIJ status on a reunification finding that the state court intended as only preliminary or temporary." ECF No. 21 at 18. The Fourth Circuit in Perez has explicitly rejected that argument:

> Utilizing ordinary rules of statutory construction, we conclude that the language of clause (i) is clear and unambiguous that neither a finding of the permanent non-viability of reunification nor a permanent custody order is required. Thus, we accord USCIS's contrary interpretation no deference and recognize that, by defying the plain statutory language, that interpretation is not in accordance with law. . . . Plainly, Congress did not intend to include a requirement in clause (i) for a finding of the permanent non-viability of reunification. By concluding that clause (i) of the SIJ provision does not require a finding of the permanent non-viability of an SIJ applicant's reunification with one or both of his parents, we reject the foundation of USCIS's theory that only a permanent custody order will satisfy clause (i). . . . There is no indication anywhere in the INA, including the SIJ provision and clause (i) itself, that Congress intended to displace the common understanding of the term "custody." As that term is commonly understood, custody may be granted by a temporary or permanent order, according to the law of the pertinent State. Consequently, clause (i) clearly and unambiguously does not require a permanent custody order.

<u>Perez</u>, 2020 WL 611530, at *6–*7.  Therefore, the court finds that the 2016 AAO Decision's interpretation of clause (i) of the SIJ provision as requiring a finding of the permanent non-viability of reunification or a permanent custody order is not in accordance with law.

### 2.  Specificity of Grounds for Non-Viability of Reunification

The government argues that in the 2016 AAO Decision, the AAO correctly found that the Temporary Order was insufficient to grant plaintiff SIJ status because the Temporary Order's finding that reunification with plaintiff's biological father was impossible "because" of death, and that plaintiff "has never been in the care of or been supported by the uncle who is listed as the father on her birth certificate" does not amount to a legal conclusion that parental death constitutes abuse, neglect, abandonment, or a similar basis under South Carolina state law.  ECF No. 21 at 14–15.  Plaintiff contends that the 2016 AAO decision was arbitrary and capricious because the AAO misinterpreted South Carolina law on neglect and abandonment.  ECF No. 18-1 at 19.  Arbitrary and capricious agency action can occur where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983).  "[S]o long as a reasonable mind could find adequate support for the decision, it must stand."  <u>Reyes v. McCament</u>, 2017 WL 3634068, at *5 (W.D.N.C. Aug. 23, 2017), aff'd sub nom. <u>Reyes v. Cissna</u>, 737 F. App'x 140 (4th Cir. 2018) (quoting <u>Ogbolumani v. Napolitano</u>, 557 F.3d 729, 733 (7th Cir. 2009)).

The Fourth Circuit has explained, "[t]his involves a searching and careful, but ultimately narrow and highly deferential, inquiry. In the end, if the agency has followed the proper procedures, and if there is a rational basis for its decision, we will not disturb its judgment." Webster v. U.S. Dep't of Agric., 685 F.3d 411, 422 (4th Cir. 2012) (internal citations omitted). "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009) (citing Natural Res. Def. Council, Inc. v. EPA, 16 F.3d 1395, 1400 (4th Cir. 1993)). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made." Ohio Valley Envtl. Coal., 556 F.3d at 192 (quotations and citations omitted).

However, the Fourth Circuit has explained what the court must do in order to give an agency action such deference:

> While the standard of review is narrow, the court must nonetheless engage in a searching and careful inquiry of the record . . . to educate the court so that it can understand enough about the problem confronting the agency to comprehend the meaning of the evidence relied upon and the evidence discarded; the questions addressed by the agency and those bypassed; the choices open to the agency and those made.

Id. at 192-93 (quotation and citations omitted).

Under South Carolina law, "abandonment of a child" means "a parent or guardian willfully deserts a child or willfully surrenders physical possession of a child without making adequate arrangements for the child's needs or the continuing care of the child." S.C. Code Ann. § 63-7-20. South Carolina law defines "child abuse or neglect" as occurring when:

(a) the parent, guardian, or other person responsible for the child's welfare:

(i) inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child, including injuries sustained as a result of excessive corporal punishment, but excluding corporal punishment or physical discipline which:

    (A) is administered by a parent or person in loco parentis;

    (B) is perpetrated for the sole purpose of restraining or correcting the child;

    (C) is reasonable in manner and moderate in degree;

    (D) has not brought about permanent or lasting damage to the child; and

    (E) is not reckless or grossly negligent behavior by the parents;

(ii) commits or allows to be committed against the child a sexual offense as defined by the laws of this State or engages in acts or omissions that present a substantial risk that a sexual offense as defined in the laws of this State would be committed against the child;

(iii) fails to supply the child with adequate food, clothing, shelter, or education as required under Article 1 of Chapter 65 of Title 59, supervision appropriate to the child's age and development, or health care though financially able to do so or offered financial or other reasonable means to do so and the failure to do so has caused or presents a substantial risk of causing physical or mental injury. However, a child's absences from school may not be considered abuse or neglect unless the school has made efforts to bring about the child's attendance, and those efforts were unsuccessful because of the parents' refusal to cooperate. For the purpose of this chapter "adequate health care" includes any medical or nonmedical remedial health care permitted or authorized under state law;

(iv) abandons the child;

(v) encourages, condones, or approves the commission of delinquent acts by the child including, but not limited to, sexual trafficking or exploitation, and the commission of the acts are shown to be the result of the encouragement, condonation, or approval;

(vi) commits or allows to be committed against the child female genital mutilation as defined in Section 16-3-2210 or engages in acts or omissions that present a substantial risk that the crime of female genital mutilation would be committed against the child; or

(vii) has committed abuse or neglect as described in subsubitems (i) through (vi) such that a child who subsequently becomes part of the person's household is at substantial risk of one of those forms of abuse or neglect; or

(b) a child is a victim of trafficking in persons as defined in Section 16-3-2010, including sex trafficking, regardless of whether the perpetrator is a parent, guardian, or other person responsible for the child's welfare. Identifying a child as a victim of trafficking in persons does not create a presumption that the parent, guardian, or other individual responsible for the child's welfare abused, neglected, or harmed the child.

S.C. Code Ann. § 63-7-20. The USCIS Policy Manual instructs that:

USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law. In order to exercise the statutorily mandated DHS consent function, USCIS requires that the juvenile court order or other supporting evidence contain or provide a reasonable factual basis for each of the determinations necessary for SIJ classification.

USCIS Policy Manual, 6 USCIS-PM J.2, Chapter 2 - Eligibility Requirements,

2017 WL 443003.

The Temporary Order does find that it is not in the best interest of plaintiff "to be returned to her country due to the neglect of her caregiver there." ECF No. 16-3 at 31. However, it is clear from the record that the caregiver that neglected plaintiff in Guatemala the Family Court is referring to in the Temporary Order is plaintiff's aunt, not her legal or biological father. Id. at 32. While the court is sympathetic to the fact that plaintiff's biological father's death would preclude reunification, there is nothing in South Carolina law that says an unintentional death is necessarily equivalent to abandonment, neglect, or abuse. There is

nothing in the record that suggests that plaintiff's biological father's death was intentional. ECF No. 16-3 at 32. Without a specific finding that plaintiff's biological father's death was abandonment, as the Family Court stated in the Final Order, the court finds that the AAO was within its discretion to find that plaintiff's biological father's death was not equivalent to abandonment, neglect, or abuse.

Additionally, while plaintiff's uncle submitted an affidavit for the Final Order stating he was not plaintiff's father, despite being listed as such on her birth certificate, that evidence was not in the record at the time the AAO reviewed the Temporary Order. ECF 16-4 at 5–6. There was no evidence submitted by plaintiff at the time of the 2016 AAO Decision that would show plaintiff's uncle was not her biological father, as the Family Court stated in the Final Order, nor that his lack of care for plaintiff equated to abandonment, neglect, or abuse. Therefore, the court finds that AAO was within its discretion to find that plaintiff's uncle was her legal father and that his lack of care was not equivalent to abandonment, neglect, or abuse.

Because the AAO acted within its discretion in the 2016 AAO Decision, the court finds that the AAO did not act in a manner that was arbitrary or capricious. Therefore, the court denies plaintiff's motion for summary judgment and grants the government's cross-motion for summary judgment as it relates to the 2016 AAO Decision.

## IV.   CONCLUSION

For the foregoing reasons, the court grants plaintiff's motion for summary judgment and denies the government's cross-motion for summary judgment as it relates to the 2018 USCIS Decision, and the court denies plaintiff's motion for summary judgment and grants the government's cross-motion for summary judgment as it relates to the 2016 AAO Decision.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 12, 2020**
**Charleston, South Carolina**